NEW LIFE HEALTH CENTER, EUGENE A. AND LINDA H. BURNS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent New Life Health Center v. Commissioner
Docket Nos. 8372-83; 17828-84; 20874-84
United States Tax Court
T.C. Memo 1989-369; 1989 Tax Ct. Memo LEXIS 368; 57 T.C.M. (CCH) 1063; T.C.M. (RIA) 89369; July 25, 1989
John J. Standifer, Jr., for the petitioners. Robert A. Johnson and Dennis C. DeBerry, for the respondent. SCOTT
MEMORANDUM OPINION SCOTT, Judge: These cases were assigned to Special Trial Judge John J. Pajak pursuant to section 7443A(b) and Rule 180 et seq. (All section numbers refer to the Internal Revenue Code in effect for the taxable years in issue. All rule numbers refer to the Tax Court Rules of Practice and Procedure.) The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: New Life Health Center, Docket No. 8372-83: Additions to tax
Year
Deficiency
section 6653(a)
1978
$ 239,227.00
$ 11,962.00
1979
$ 277,723.00
$ 13,886.00
*369 Eugene A. and Linda H. Burns, Docket No. 8372-83: Additions to tax
Year
Deficiency
section 6653(a)
1978
$ 423,604.05
$ 21,180.20
1979
$ 369,315.00
$ 18,465.75
Sheldon C. Deal and Cindy M. Deal, Docket No. 17828-84: Additions to tax
Year
Deficiency
section 6653(a)
1978
$ 352,948.00
$ 17,647.40
1979
$ 462,519.00
$ 23,125.95
1980
$ 537,312.00
$ 26,865.60
New Life Health Centers, Inc., Docket No. 20874-84: Additions to tax under
sections
Year
Deficiency
6651(a)(1)
6653(a)
1978
$ 2,862.00
$ 715.50
$ 143.10
Numerous issues were resolved in a stipulation of settled issues filed with the Court at trial. The remaining issues for decision are (1) whether New Life Health Centers, Inc., was liquidated in 1977 or 1978, and (2) if New Life Health Centers, Inc., was liquidated in 1978, what was the basis of each petitioner/husband in his corporate stock at the time of liquidation. To the extent stipulated, the facts are so found. Petitioner New Life Health Center had an address in Tucson, Arizona, and petitioners Eugene A. Burns (Burns) and Linda H. Burns resided in Tucson, *370 Arizona, when their petition was filed. Petitioners Sheldon C. Deal (Deal) and Cindy M. Deal resided in Tucson, Arizona, when their petition was filed. Petitioner New Life Health Centers, Inc., (the corporation) had an address in Tucson, Arizona, when its petition was filed. Respondent determined that the corporation was liquidated in 1978. Petitioners contend that the liquidation of the corporation occurred in 1977, a year not before the Court. In the alternative, if the Court finds that the corporation was liquidated in 1978, Burns and Deal contend that their bases in their shares of the corporation's stock are each equal to one-half of the amount of equity shown on the balance sheet at the time of incorporation. Unfortunately for petitioners, the record does not support their contentions. We do not believe Burns' self-serving testimony that the New Life Health business was set up originally as a partnership on August 14, 1970, that the $ 49,594.32 was not the net worth of Deal alone, that Burns was a half owner of that amount, that he owned one-half of the stock in the corporation, that the corporation was terminated on August 31, 1977, that the assets of the corporation *371 were transferred to the New Life Health Center Trust Organization and that the 1977 return of the corporation marked final should have been a trust return. Burns' testimony is contrary to the written documentation in the record and his comments about documents were not persuasive. The corporation held the first meeting of its board of directors on September 1, 1971. Deal was elected chairman of the board of directors and president and treasurer of the corporation. Burns was elected vice-president, general manager and secretary of the corporation. The board of directors agreed to exchange corporate stock on a dollar for dollar basis with Deal for Deal's equity in his sole proprietorship, known as New Life Health Center. The balance sheet of the sole proprietorship as of August 31, 1971, lists Deal with assets of $ 62,340.16 and liabilities of $ 12,745.84, leaving $ 49,594.32 in equity in the sole proprietorship. The corporation issued 49,594 original shares of stock to Deal. No mention of shares of stock issued to anyone other than Deal was in the minutes of the September 1, 1971 board of directors meeting. On August 28, 1972, Deal exchanged the 49,594 original shares for *372 24,796 shares. On that same date he exchanged the 24,796 shares for 22,500 shares. On August 28, 1972, Burns was issued 24,798 shares, which he exchanged on that same date for 22,500 shares. There is no evidence of the consideration paid by Burns for these shares. As of that date, and at the time the corporation's final tax return was filed on June 15, 1978, Burns and Deal held an equal number of shares. The individual petitioners were members of the American Law Association at all relevant times. In August, 1977, a number of foreign trust documents were signed. Included were documents for the New Life Health Center (NLHC) foreign trust. The parties have agreed that NLHC should not be recognized for tax purposes for the years in issue and that Burns and Deal may have additional income in 1978 depending on the Court's decision in these cases. NLHC stated in its minutes dated August 23, 1977, that it transferred to the corporation 100 trust certificate units purportedly in exchange for property described on an attached schedule. The schedule showed zero dollars transferred, was not specific about other property purportedly transferred, and was missing five attachments. *373 Petitioners failed to introduce any corporate books or records into evidence to show a liquidation in 1977. The Form W-2 statement for Burns for 1977 uses the employer identification number of the corporation but lists the employer's name as the New Life Health Center Trust Organization, a variation on the name of NLHC. (Both shall be referred to as NLHC.) Total wages for Burns for 1977 listed on the W-2 statement were $ 15,730.00 and this was the total amount reported on his individual income tax return for 1977. Although Burns claims he received a Form W-2 from the corporation for only the first eight months of 1977, on the evidence before us, we find that the corporation was Burns' employer for the entire year of 1977. On June 15, 1978, the corporation filed its Form 1120 tax return for 1977, marked final. This is the only return of the corporation marked final that is in the record. It was signed under penalties of perjury by Burns as president. The return reported that as of December 31, 1977, the corporation had assets of $ 81,170.00 in cash, $ 109,421.00 in inventory, and $ 77,156.00 in buildings and other fixed assets before depreciation. The corporation's name was *374 clearly stated on the return. Burns and the accountant who prepared the return would know the entity for which it was prepared in June, 1978. Furthermore, the return uses the corporation's employer identification number. The parties stipulated that the return was the corporation's return for the period September 1, 1977 through December 31, 1977. The return states that the corporation was in business for a 12 month period and most significantly that there was no transfer to a foreign trust which was in being during the current taxable year. We find that the assets reported on the corporation's final Form 1120 were still in the corporation's possession at the close of business in 1977, and could not have been transferred to NLHC until 1978. In 1978, Burns and Deal each reported Form W-2 income based on two Forms W-2. Deal's Forms W-2 are the same as Burns', with different amounts of income. We will discuss the Burns' Forms W-2 for example. One is on a "1977" Form W-2 which showed $ 2,520.00 in income and used the corporation's employer identification number, although it listed NLHC as the employer. The other 1978 Form W-2 showed $ 16,685.00 in income and used NLHC's employer *375 identification number. We are satisfied that the "1977" Form W-2 income reported on Burns' 1978 return was for 1978 income received from the corporation, particularly since there is a separate 1978 Form W-2 from NLHC. Consequently, we find that Burns and Deal were still employed by the corporation in 1978. Because the corporation retained its assets until 1978 and employed and paid Burns and Deal in 1978, we conclude that the corporation was liquidated in 1978. Because Burns, Deal, and the corporation have stipulated with respondent that they will have calculable additional income and deficiencies in income tax and additions to tax due to a liquidation in 1978, no further discussion of this issue is necessary. Since we have found that the corporation was liquidated in 1978, we must now consider whether Burns and Deal have proven what their basis in their corporate stock was at the time of the liquidation. The burden of proving basis is on petitioners. , affg. a Memorandum Opinion of this Court. Burns has failed *376 to show any credible evidence of basis. Deal only showed a basis of the assets of his sole proprietorship prior to the transfer to the corporation in 1971. Distributions of property may have been made during the period of operation of the corporation that would have reduced basis. Deal may have sold or given half of the stock to Burns. Such actions would have reduced or even eliminated Deal's basis. The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to the party gives rise to the presumption that if produced it would be unfavorable. , affd. . We agree with respondent that on this record Burns' and Deal's bases in the corporate stock at the time of liquidation must be considered to be zero because of their failure to prove otherwise. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Sheldon C. Deal and Cindy M. Deal, docket No. 17828-84, and New Life Health Centers, Inc., docket No. 20874-84.↩